**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON UNGER,<br><br>Plaintiff,<br><br>v.<br><br>LANDMARK INFRASTRUCTURE PARTNERS LP, ARTHUR P. BRAZY, JR., MATTHEW P. CARBONE, JAMES F. BROWN, EDMOND G. LEUNG, KEITH BENSON, THOMAS CAREY WHITE III, and GERALD A. TYWONIUK,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Aaron Unger ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.  Plaintiff Landmark Infrastructure Partners LP ("Landmark" or the "Partnership") and Landmark's Board of Directors (the "Board" or the "Individual Defendants,") for Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Partnership to Landmark Dividend LLC ("Parent" or "LD"), a wholly owned subsidiary of Landmark Infrastructures GP LLC (the "General Partner" or "GP"),

- 1 -
COMPLAINT

through vehicles LM DV Infrastructure, LLC ("Merger Sub 1"), Digital LD MergerCo LLC, Digital LD MergerCo II LLC (collectively, "Merger Vehicles" and collectively with Landmark, the Board, and LD, the "Defendants") to enjoin a proposed all cash freeze-out transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an August 25, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, public unitholders will receive $16.50 in cash for each common unit owned.

3. Thereafter, on September 10, 2021, Landmark filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction appears to be unfair for a number of reasons, not the least of which is that the Proposed Transaction is a freeze out, wherein the controlling general partner of a limited partnership (in this case GP (through LD) and Landmark, respectively) is seeking to buy out all unaffiliated public unitholders, including Plaintiff. Despite this position of power, and the fact that that LD and its affiliates, including the Board and GP, own approximately 20% of the outstanding common units of the Partnership, there is no requirement that a majority of unaffiliated unitholders approve the Proposed Transaction.

5. It appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Partnership significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Partnership Board Members and executive officers will be able to exchange all Partnership equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on September 10, 2021 with the SEC in an effort to solicit

Plaintiff to vote his Landmark units in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Landmark, provided by Landmark to the Partnership's financial advisor Evercore Group L.L.C. ("Evercore"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Evercore and provided to the Board

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of California and, at all times relevant hereto, has been a Landmark unitholder.

10. Defendant Landmark owns and manages a portfolio of real property interests and infrastructure assets that the Partnership leases to companies in the wireless communication, digital infrastructure, outdoor advertising and renewable power generation industries. Landmark is incorporated under the laws of the State of Delaware and has its principal place of business at 400 Continental Blvd, Suite 500, P.O. Box 3429 El Segundo, CA 90245. Units of Landmark common units are traded on the NasdaqGS under the symbol "LMRK".

11. Defendant Arthur P. Brazy, Jr. ("Brazy, Jr.") has been a Director of the GP at all relevant times. In addition, Brazy, Jr. serves as the Partnership's Chief Executive Officer ("CEO").

12. Defendant Matthew P. Carbone ("Carbone") has been a director of the GP at all relevant times. In addition, Carbone is the Partnership's Chairman of the Board of Directors.

13. Defendant James F. Brown ("Brown") has been a director of the GP at all relevant times.

14. Defendant Edmond G. Leung ("Leung") has been a director of the GP at all relevant times.

15. Defendant Keith Benson ("Benson") has been a director of the GP at all relevant times.

16. Defendant Thomas Carey White III ("White III") has been a director of the GP at all relevant times.

17. Defendant Gerald A. Tywoniuk ("Tywoniuk") has been a director of the GP at all relevant times.

18. Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party LD is a real estate and infrastructure acquisition and development limited liability focusing on the digital infrastructure, wireless communications, outdoor advertising and renewable power generation industries and is the general partner of Landmark. Landmark is a publicly-traded subsidiary of LD established to acquire, own and manage a diversified, growing portfolio of real property interests and infrastructure assets.

20. Non-Party GP is the general partner of Landmark and its Board of Directors serve as the Board of Landmark. It is affiliated with both Landmark and LD.

21. Non-Party Merger Vehicles are wholly owned subsidiaries of LD created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

13. Defendant James F. Brown ("Brown") has been a director of the GP at all relevant times.

14. Defendant Edmond G. Leung ("Leung") has been a director of the GP at all relevant times.

15. Defendant Keith Benson ("Benson") has been a director of the GP at all relevant times.

16. Defendant Thomas Carey White III ("White III") has been a director of the GP at all relevant times.

17. Defendant Gerald A. Tywoniuk ("Tywoniuk") has been a director of the GP at all relevant times.

18. Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party LD is a real estate and infrastructure acquisition and development limited liability focusing on the digital infrastructure, wireless communications, outdoor advertising and renewable power generation industries and is the general partner of Landmark. Landmark is a publicly-traded subsidiary of LD established to acquire, own and manage a diversified, growing portfolio of real property interests and infrastructure assets.

20. Non-Party GP is the general partner of Landmark and its Board of Directors serve as the Board of Landmark. It is affiliated with both Landmark and LD.

21. Non-Party Merger Vehicles are wholly owned subsidiaries of LD created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Landmark maintains its principal offices in this district, and each of the Individual Defendants, as Partnership officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Partnership Background*

25. Landmark acquires, owns, develops, and manages a portfolio of real property interests and infrastructure assets in the United States. The Partnership leases its real property interests and infrastructure assets to companies operating in the wireless communication, digital infrastructure, outdoor advertising, and renewable power generation industries. Its real property interests primarily include long-term and perpetual easements, tenant lease assignments, fee simple properties, and infrastructure assets. The Partnership also owns various interests in receivables associated with related assets. Landmark Infrastructure Partners GP LLC serves as the general partner of the Partnership. Landmark was incorporated in 2014 and is based in El Segundo, CA.

26. The Partnership's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the August 4, 2021 press release announcing its 2021 Q2 financial results, the Partnership highlighted such milestones as Rental revenue of $17.6 million, a 27% increase year-over-year as well as declared a quarterly distribution of $0.20 per common unit.

27. Speaking on these positive results, CEO of the Partnership's General Partner, Tim Brazy, commented on the Partnership's positive financial results as follows, "'The Partnership delivered another solid quarter of operating and financial results. The opportunistic acquisitions

completed during 2020, along with growing cash flows from our portfolio, contributed to strong year-over-year growth in AFFO.'"

28. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Landmark. Clearly, based upon these positive financial results and outlook, the Partnership is likely to have tremendous future success.

29. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Landmark to enter into the Proposed Transaction without providing requisite information to Landmark unitholders such as Plaintiff.

**The Flawed Sales Process**

30. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a freeze out of the Partnership by any means possible.

31. Notably, the Preliminary Statement fails to indicate if a the "Conflicts Committee" of GP which ran the sales process was composed of disinterested and independent Board members.

32. In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Partnership and all potentially interested third parties throughout the sales process, whether this agreement differed from each other, if so in all specific manners, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, all specific conditions, if any, under which such provisions would fall away.

33. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

34.     On August 23, 2021, Landmark issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **EL SEGUNDO, Calif., Aug. 23, 2021** – Landmark Infrastructure Partners LP ("Landmark," or the "Partnership") (NASDAQ: LMRK) today announced that, following lengthy negotiations between the Conflicts Committee of the Board of Directors of Landmark Infrastructure Partners GP LLC (the "General Partner" or "GP") (the "Conflicts Committee") and the Partnership's sponsor, Landmark Dividend LLC ("LD"), the Partnership and LD have entered into a definitive agreement under which the Partnership will be acquired by LD.
>
> Under the terms of the agreement, Landmark public unitholders will receive $16.50 in cash for each common unit owned, representing a premium of 38% to the Partnership's unaffected unit price on May 14, 2021, the last business day prior to the announcement of LD's proposed acquisition of Landmark for $13.00 per common unit. The agreement between Landmark and LD reflects one of the highest premiums ever paid in a transaction where a GP purchases its MLP.
>
> LD owns, among other things, 100% of the membership interests in the General Partner and 13.2% of the common units representing limited partner interests in the Partnership. After consultation with its independent legal and financial advisors, and consistent with the recommendation of the Conflicts Committee that is composed entirely of independent directors of the GP, the agreement was reviewed and unanimously approved by the full Board of Directors of the GP. Both the Conflicts Committee and the full Board of Directors of the GP determined the transaction with LD to be in the best interests of the Partnership.
>
> LD is only considering the acquisition of Landmark or, if the proposed transaction is not consummated as expected, LD will continue operating Landmark in its role as the GP. LD is not considering third party offers for Landmark or its assets. LD's acquisition of Landmark is fully financed and fully diligenced, and takes into account the value inherent in LD's GP ownership interest and incentive distribution rights ("IDRs"). LD is interested in acquiring all of Landmark's assets, as evidenced by its agreement to purchase the entire Partnership rather than select assets. This transaction offers certainty as well as compelling and immediate value for unitholders, particularly given that Landmark's cash flow will be adversely impacted by the expiration of the cap on Landmark's agreement to reimburse LD for a portion of its expenses for general and administrative services on November 19, 2021. In addition, the GP intends to exercise its contractual right to be reimbursed for costs and expenses it incurs for services provided to Landmark.
>
> The transaction is expected to close in 2021, subject to customary closing conditions and approval by the holders of a majority of Landmark's outstanding common units.

TAP Securities LLC and RBC Capital Markets are acting as financial advisors and Simpson Thacher & Bartlett LLP and Latham & Watkins, LLP are acting as legal advisors to LD. Truist Securities Inc. is acting as left lead arranger and joint bookrunner, and Citizens Bank N.A., RBC Capital Markets and TD Securities (USA) LLC are acting as joint lead arrangers and joint bookrunners for the debt financing. Evercore is acting as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is acting as legal advisor to the Conflicts Committee.

***Potential Conflicts of Interest***

35. The breakdown of the benefits of the deal indicate that Landmark insiders are the primary beneficiaries of the Proposed Transaction, not the Partnership's public unitholders such as Plaintiff. The Board and the Partnership's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public unitholder of Landmark.

36. First, is the fact that the Proposed Transaction is a freeze out, seeking to allow Partnership insiders to gain control over the entire Partnership. Notably, according to the Preliminary proxy, approximately 20% of the outstanding units are owned by such insiders. Despite this, no provision requiring a majority of the non-affiliated unitholders to vote in favor of the Proposed Transaction is present in the Merger Agreement.

37. Additionally, Partnership insiders currently own large, illiquid portions of Partnership units that will be exchanged for the merger consideration and/or rolled over into the surviving entity upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following information, it fails to disclose an accounting of the value, in terms of the merger consideration, assigned to such amounts:

| Name of Beneficial Owner | Positions with the Partnership GP | Common Units Beneficially Owned[1] | Percentage of Common Units Beneficially Owned |
|---|---|---|---|
| Arthur P. Brazy, Jr. | Chief Executive Officer and Director | 180,872 | * |
| George P. Doyle | Chief Financial Officer and Treasurer | 19,439 | * |
| Keith Benson | Director | 10,195 | * |
| Thomas Carey White III | Director | 20,541 | * |
| Gerald A. Tywoniuk | Director | 19,371 | * |
| Steven Sonnenstein | Chairman of the Board of Directors | — | — |
| Sadiq Malik | Director | — | — |

- 8 -
COMPLAINT

| All Directors and Executive Officers as a group (7 persons) | | 250,418 | * |

| Name of Beneficial Owner | Common Units Beneficially owned[1] | Percentage of Common Units Beneficially Owned |
|---|---|---|
| Landmark Dividend[2] | 3,360,308 | 13.2% |
| Dennis S. Hersch[3] | 1,594,863 | 6.3% |

38. Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy Statement indicates that each outstanding Partnership equity award will be canceled and converted into the right to receive certain consideration, not shared by Plaintiff, according to the merger agreement, however the Preliminary Proxy Statement fails to disclose an accounting of such awards or how much merger consideration will be afforded to Partnership insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts.

39. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Partnership's unitholders

40. Thus, while the Proposed Transaction is not in the best interests of Landmark, Plaintiff or Partnership unitholders, it will produce lucrative benefits for the Partnership's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

41. On September 10, 2021, the Partnership Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Partnership Unitholder with material information

and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Partnership and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

a. The specific reasoning as to why no requirement that the approval of a majority of unaffiliated unitholders be required to approve the Proposed Transaction was included;

b. Whether the confidentiality agreements entered into between the Partnership and any potentially interested third party (including LD) during the sales process differed from one another, and if so, in all specific manners;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Partnership and potentially interested third parties throughout the sales process, including LD, would fall away; and

d. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. This information is necessary for unitholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Partnership unitholders.

COMPLAINT

*Omissions and/or Material Misrepresentations Concerning Landmark's Financial Projections*

43. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Landmark provided by Landmark management and relied upon by Evercore in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Partnership which are materially misleading.

44. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Evercore reviewed, "certain internal projected financial and operating data and assumptions relating to the Partnership that were prepared and furnished to Evercore by management of the Partnership".

45. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Landmark management provided to the Board and Evercore. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

46. With regard to the Landmark Projections prepared by the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. EBITDA, including all underlying necessary metrics and assumptions, including specifically: net income, interest, income taxes, depreciation and amortization;

    b. Adjusted EBITDA, including all underlying necessary metrics and assumptions, including specifically: impairments, acquisition-related expenses, unrealized and realized gains and losses on derivatives, loss on extinguishment

        of debt, gains and losses on sale of real property interests, unit-based compensation, straight line rental adjustments, amortization of above- and below-market rents plus cash receipts applied toward the repayments of investments in receivable, the deemed capital contribution to fund the Partnership's general and administrative expense reimbursement and adjustments for investments in unconsolidated joint ventures; and

    c.   Distributable Cash Flow (AFFO), including all underlying necessary metrics and assumptions, including specifically: FFO (including the underlying necessary metrics and assumptions necessary to calculate FFO, including specifically: net income (loss), real estate related depreciation and amortization expense, real estate related impairment charges, gains (or losses) on real estate transactions, adjustments for unconsolidated joint venture, and distributions to preferred unitholders and noncontrolling interests), and the specific adjustments made to FFO for certain non-cash items that reduce or increase net income in accordance with GAAP.

47. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections

48. This information is necessary to provide Plaintiff in his capacity as a Partnership unitholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Partnership's true worth, the accuracy of Evercore's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore*

50. In the Preliminary Proxy Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The specific cash flows utilized by Evercore (including specifically which cash flow projection metrics provided in the projections were utilized);
   b. The Partnership's utilized weighted average cost of capital;
   c. The Partnership's terminal values utilized;
   d. The specific inputs and assumptions used to determine the utilized discount rate range of 6.5% to 7.5%;
   e. The specific inputs and assumptions used to determine the utilized EBITDA exit multiple range of 13.0x to 17.0x; and
   f. The specific inputs and assumptions used to determine the utilized annual perpetuity growth rate range of 2.0% to 3.0%.

52. With respect to the *Discounted Distribution Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The specific inputs and assumptions used to determine the terminal yield rate range of 6.0% to 7.5%;
   b. The specific inputs and assumptions used to determine the cost of equity of 12.5% to 14.5%; and
   c. The specific inputs and assumptions used to determine the cost of equity of 10.5% to 12.5%.

53. With respect to the *Precedent M&A Transaction Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The specific metrics for each precedent transaction;
   b. The specific inputs and assumptions used to determine the range of relevant implied multiples of market value of equity, plus debt and preferred units, less cash ("Enterprise Value") to EBITDA of 15.0x to 20.0x;
   c. The date on which each precedent transaction closed; and
   d. The value of each precedent transaction.

54. With respect to the *Peer Group Trading Analysis*, the Preliminary Proxy Statement fails to disclose:

   a. The specific metrics for each compared peer entity;
   b. The specific inputs and assumptions used to determine the range of Enterprise Value/2021 EBITDA of 130x – 17.0x; and
   c. The specific inputs and assumptions used to determine the range of Enterprise Value/2022 EBITDA of 130x – 17.0x.

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a unitholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Landmark unitholder. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

# FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting unitholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have

known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

64. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his units in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the unitholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

65. Plaintiff repeats all previous allegations as if set forth in full herein.

66. The Individual Defendants were privy to non-public information concerning the Partnership and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Partnership unitholder.

67. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Partnership in the Preliminary Proxy Statement and nevertheless

approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Landmark's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Partnership, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69. The Individual Defendants acted as controlling persons of Landmark within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Partnership, the Individual Defendants had the power and authority to cause Landmark to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Landmark and all of its employees. As alleged above, Landmark is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of

material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.   Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 1, 2021

**BRODSKY SMITH**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*